JOAN PEARSON, Appellant, v ARTHUR PEARSON, Respondent.

Second Department, May 20, 1985

### APPEARANCES OF COUNSEL

*McCormack & Phillips* (*Ronald A. Phillips* of counsel; *Ralph S. Joseph* on the brief), for appellant.

*Granik, Silverman, Sandberg, Campbell & Nowicki* (*Paul V. Nowicki* of counsel), for respondent.

**OPINION OF THE COURT**

Rubin, J.

The parties obtained a New Hampshire divorce decree effective September 6, 1977. Incorporated, but not merged, into that decree was a written stipulation agreement which provided, *inter alia,* for the payment of alimony to the wife. The alimony provision was specifically made pursuant to New Hampshire Revised Statutes Annotated § 458:19, the New Hampshire alimony statute, which provides, to the extent relevant to these appeals, that any alimony provision "shall be effective for not more than three years from the date thereof, but such order may be renewed, modified or extended if justice requires for periods of not more than three years at a time".

When Mr. Pearson ceased making the alimony payments, Mrs. Pearson, a resident of New York, petitioned the Family Court, Rockland County, for an order enforcing the alimony provisions of the New Hampshire divorce decree, pursuant to Family Court Act § 466 (c). Her petition was granted and, by orders dated July 9, 1979 and April 7, 1980, respectively, Mr. Pearson was directed, *inter alia,* "to make payment in accordance with the divorce decree".

By order to show cause, dated April 2, 1982, Mr. Pearson moved, *inter alia,* to vacate or modify the enforcement order dated April 7, 1980, on the grounds, *inter alia,* that the alimony provision, which was specifically made in accordance with New Hampshire Revised Statutes Annotated § 458:19, was only effective for three years from the date of the divorce decree. Since the alimony provision had never been renewed, modified or extended, Mr. Pearson argued that the alimony provision had terminated on September 6, 1980. Cognizant that the Family Court had limited jurisdiction and that the foreign divorce decree was entitled to full faith and credit, the Family Court concluded that there was no longer a currently effective alimony provision which could be enforced by it. Therefore, the Family Court, in an order dated April 19, 1983, granted that branch of the motion which sought to vacate the previous order of enforcement dated April 7, 1980. In the vacatur order, the Family Court directed the support collection unit to compute and collect any sums still owed to Mrs. Pearson during the period in which the alimony provision was in effect. By order dated December 20, 1983, the Family Court directed a hearing on a subsequent motion brought by Mr. Pearson for resettlement of the April 19, 1983 order on the ground that he had made payments not credited to him. Mrs. Pearson appeals from both these orders.

It is well settled that a foreign divorce decree in which both parties were subject to the personal jurisdiction of the court is entitled to full faith and credit by the courts of New York (*see, Williams v North Carolina,* 317 US 287; *Greene v Greene,* 90 AD2d 533). Family Court Act § 466 (c) empowers the Family Court to entertain applications to enforce and modify alimony and support provisions of foreign divorce decrees, irrespective of the grounds upon which the decrees were granted (*Matter of Silver v Silver,* 36 NY2d 324; *Beaverson v Beaverson,* 72 AD2d 963; *Wertheimer v Wertheimer,* 50 AD2d 879). Since the Family Court is a court of limited jurisdiction, it cannot exercise powers beyond those granted to it by statute (*Matter of Borkowski v Borkowski,* 38 AD2d 752; *Loeb v Loeb,* 14 AD2d 270). Pursuant to Family Court Act § 466 (c), the Family Court's power to enforce or modify is limited to cases where there is a currently effective support or alimony provision (*Matter of Silver v Silver, supra; Beaverson v Beaverson, supra; Wertheimer v Wertheimer, supra*). If a foreign divorce decree does not contain any alimony or support provisions, the Family Court has no power to make alimony or support provisions (*see, Matter of Blizniak v Blizniak,* 73 AD2d 1050). Similarly, if the foreign decree at one time provided for alimony or support payments, but the alimony or support provision has terminated pursuant to its express terms, the Family Court no longer has authority to enforce or modify the subject provision (*see, Matter of Silver v Silver, supra*).

In this case, the New Hampshire divorce decree entitled Mrs. Pearson to alimony for a period of three years from the date of the decree, unless there was a renewal, modification or extension of the alimony provision. When Mrs. Pearson petitioned the Family Court within three years from the effective date of the decree, the Family Court had the power to enforce or modify the alimony provisions. However, in her petition, Mrs. Pearson sought only an enforcement of the provisions of the New Hampshire decree. Mrs. Pearson never applied to the Family Court to modify the alimony provision by extending the duration of time in which she would be entitled to receive the alimony payments. Therefore, the order of enforcement merely enforced the alimony provision of the foreign divorce decree as expressly written. In other words, the order of April 7, 1980 enforced Mrs. Pearson's right to receive alimony for a period of three years after the divorce decree. At the expiration of three years, the alimony provision terminated. No application to renew, modify or extend the alimony provision was ever made. Therefore, when Mr. Pearson sought to vacate the order of enforcement by order to show cause dated April 2, 1982, the

three-year alimony provision of the foreign decree had already expired on September 6, 1980. Consequently, on the date of the motion to vacate, there was no longer a currently effective alimony provision which the Family Court, a court of limited jurisdiction, had the power to enforce or modify.

■ Accordingly, the order dated April 19, 1983 should be affirmed. The appeal from the order dated December 20, 1983 should be dismissed. That order, which directs a judicial hearing to aid in the disposition of the motion to resettle the order dated April 19, 1983, does not affect a substantial right (*see,* CPLR 5701 [a] [2] [v]), and therefore is not appealable as of right (*see, Matter of Manufacturers Hanover Trust Co. v Porcelli,* __ AD2d __ [2d Dept, May 6, 1985]; *De Santis v De Santis,* 107 AD2d 734; *Bagdy v Progresso Foods Corp.,* 86 AD2d 589).

TITONE, J. P. (dissenting). This is a proceeding brought pursuant to Family Court Act § 466 to enforce the support provisions incorporated, but not merged, in a New Hampshire divorce decree. The petitioner wife, Joan Pearson, appeals from two orders of the Family Court, Rockland County, which, in essence, granted her former husband's application to vacate previously entered orders of support. The core question is whether the full faith and credit clause (US Const, art IV, § 1) bars New York from directing that a New York spouse continue to receive such support by virtue of a New Hampshire statutory provision which limits alimony payments under the present circumstances to three years from the effective date of the decree unless an application is made for renewal. Because the New Hampshire decree is modifiable under New Hampshire law and because the New Hampshire decree was made an order of the Family Court within the three-year period, I conclude that there is no such bar and cast my vote for reversal.

The parties were divorced by decree of the Superior Court of New Hampshire, Grafton County, effective September 6, 1977. A handwritten stipulation, providing for Mrs. Pearson's support at the rate of $1,300 per month for the first year and $1,100 per month thereafter "pursuant to [New Hampshire] RSA 458:19", was incorporated, but not merged, in the decree. Insofar as pertinent to the Pearson marriage, New Hampshire Revised Statutes Annotated § 458:19 provides that a decree for alimony "shall be effective for not more than three years from the date thereof, but such order may be renewed, modified or extended if justice requires for periods of not more than 3 years at a time".

When Mr. Pearson ceased making payments, Mrs. Pearson, then and now a resident of Spring Valley, New York, applied to

the Family Court, Rockland County, for an enforcement order pursuant to Family Court Act § 466. The Family Court issued two orders, dated July 9, 1979 and April 7, 1980, respectively, the latter following an appearance by Mr. Pearson through counsel, which, *inter alia,* directed Mr. Pearson to make certain payments and granted Mrs. Pearson's "application to enter an order enforcing the support provisions of the divorce decree".

Following some collateral proceedings brought in New Hampshire by Mr. Pearson — including an attempt to obtain a Federal court injunction against the Family Court — Mr. Pearson brought a motion by order to show cause in the Family Court, Rockland County, seeking to modify or vacate the enforcement orders upon the ground that his obligation to make payments terminated on September 6, 1980 in accordance with New Hampshire law. Concluding that "the New Hampshire divorce decree is entitled to full faith and credit in New York with respect to the issue of alimony" (*Pearson v Pearson,* 118 Misc 2d 850, 852) and that it lacked jurisdiction to direct any further continuation of alimony, the Family Court vacated its prior orders. Mrs. Pearson appeals.

Stated as a basic, a sister State cannot terminate a spouse's right to alimony unless it obtains personal jurisdiction over both parties and its decree either provides that no alimony at all be paid or that there be a lump-sum, nonmodifiable payment (*see, e.g., Barber v Barber,* 323 US 77; *Sistare v Sistare,* 218 US 1; *Lynde v Lynde,* 181 US 183; *Langerman v Langerman,* 303 NY 465; Restatement [Second] of Conflict of Laws § 77; Weintraub, Commentary on Conflict of Laws § 5.2E2, at 244 [2d ed]). Inasmuch as the New Hampshire decree has always been, and even now is, subject to prospective and retroactive modification (*see, e.g., Morphy v Morphy,* 112 NH 507, 509, 298 A2d 580, 581; *Johnson v Johnson,* 196 Misc 487), we are not bound to enforce it as a matter of constitutional imperative (*Barber v Barber, supra; Sistare v Sistare, supra; Lynde v Lynde, supra; Langerman v Langerman, supra; Carbone v Alverio,* 89 AD2d 553; Scoles and Hay, Conflict of Laws § 24.8), but may choose to do so, either in whole or in part, as a matter of comity (*Halvey v Halvey,* 330 US 610, 615; *Worthley v Worthley,* 44 Cal 2d 465, 283 P2d 19, cited with approval in *Matter of Joseph,* 27 NY2d 299, 303; *Mittenthal v Mittenthal,* 99 Misc 2d 778; 2 Foster-Freed, Law and the Family § 25:68; Scoles and Hay, Conflict of Laws § 15.36).

As have many other States (Weintraub, Commentary on Conflict of Laws § 5.2E3, at 246 [2d ed]; *see, Harrison v Harrison,* 214 F2d 571, 574; Ann., 18 ALR2d 862, 867; Ann., 132 ALR

1272; Restatement [Second] of Conflict of Laws § 109), New York has chosen to provide mechanisms for resident spouses to obtain enforcement of sister State decrees. One such mechanism,[1] Family Court Act § 466, invoked here, enables the spouse to convert the sister State decree into a New York Family Court order (*Tannenberg v Beldock,* 68 AD2d 307, 312), thereby obtaining all of the procedural and substantive rights and remedies this State affords to its own decrees (*see, Carbone v Alverio, supra,* at p 554; *Blackburn v Blackburn,* 113 Misc 2d 619; *Mittenthal v Mittenthal, supra; Ehrenzweig v Ehrenzweig,* 86 Misc 2d 656, *affd* 61 AD2d 1003; Restatement [Second] of Conflict of Laws § 109; Scoles, Enforcement of Foreign "Non-Final" Alimony and Support Orders, 53 Colum L Rev 817; Mills, Interstate Recognition of Alimony Decrees, 41 Cal L Rev 692).

To be sure, resort cannot be had to the provisions of Family Court Act § 466 when there is no currently effective support or alimony provision in the sister State decree. In such circumstances, there is nothing to modify or enforce and the Family Court lacks subject matter jurisdiction (*Matter of Silver v Silver,* 36 NY2d 324; *Greene v Greene,* 90 AD2d 533; *Wertheimer v Wertheimer,* 50 AD2d 879, 880).[2] These authorities are inapposite here because Mrs. Pearson commenced the enforcement proceeding and obtained a New York order within three years of the New Hampshire decree, while that decree still unquestionably directed the payment of alimony. Just as a codicil republishes a will, so, too, the effect of the New York order, made with jurisdiction over both parties, at the very least, should have a three-year life of its own (*cf. Harris v Harris,* 259 NY 334; *Bottner v Bottner,* 39 AD2d 680; *Nudelman v Nudelman,* 10 AD2d 857; *but see, Clevesy v Clevesy,* 118 NH 112, 383 A2d 705). New Hampshire cases suggest that even an "expired" decree may be "modified" to extend the three-year period without the

---

**1.** *Lynn v Lynn* (302 NY 193, *cert denied* 342 US 849), relied upon by the Family Court, is plainly distinguishable as it involved a final decree which awarded no alimony at all (*see, e.g., Carbone v Alverio,* 89 AD2d 553, 554).

**2.** For a comprehensive discussion of the power of the Family Court in this area see Sladkus, *Family Court's Power in Alimony and Child Support in Foreign Divorce Decrees* (NYLJ, Aug. 23, 1967, p 1, col 4; Aug. 24, 1967, p 1, col 4). It also should be noted that the remedies set forth in the Family Court Act are not exclusive. A spouse may, among other things, commence a proceeding on the foreign decree itself in the Supreme Court, seek relief under the Uniform Support of Dependents Law (Domestic Relations Law art 3-A) or in an action on the nonmerged agreement itself pursuant to *McMains v McMains* (15 NY2d 283), or simply file the decree in New York in accordance with the Uniform Enforcement of Foreign Judgments Act (CPLR art 54) (*see generally,* 2 Foster-Freed, Law and the Family §§ 25:64-25:68).

necessity of a new plenary action (*Clevesy v Clevesy, supra; Taylor v Taylor,* 108 NH 193, 230 A2d 737).

Be that as it may, nothing in the full faith and credit clause compels New York to follow New Hampshire procedures with respect to the Family Court order of enforcement (*e.g., Allstate Ins. Co. v Hague,* 449 US 302; *Pacific Ins. Co. v Commn.,* 306 US 493, 502-505; *Alaska Packers Assn. v Commn.,* 294 US 532, 544-550; *Pearson v Northeast Airlines,* 309 F2d 553, *cert denied* 372 US 912; Restatement [Second] of Conflict of Laws § 103; *see,* Rodgers and Rodgers, The Disparity Between Due Process and Full Faith and Credit: The Problem of the Somewhere Wife, 67 Colum L Rev 1363). New York has a paramount interest in enabling a resident spouse to receive continued support and its law should measure the period that support must be paid under what is now a New York order (*see, Petersen v Petersen,* 24 Cal App 3d 201, 100 Cal Rptr 822; *D.R.-T. v O.M.,* 244 So 2d 752 [Fla App]; *Matter of Lalli v Lalli,* 80 AD2d 897; *Matter of Danis v Stillerman,* 66 AD2d 818, 819; *Matter of Virginia B. v Richard B.,* 124 Misc 2d 427, 428; *Paden v Warnke,* 110 Misc 2d 61, 66 [Niehoff, J.]; Restatement [Second] of Conflict of Laws §§ 142, 143; Scoles and Hay, Conflict of Laws §§ 15.37, 15.38 [i]).

The preequitable distribution decisions in this State, which control here (*see, Pollack v Pollack,* 56 NY2d 968; Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:3, 1977-1984 Supp Pamph, p 182; *cf. Lavi v Lavi,* 103 AD2d 400), established a policy that alimony be awarded without regard to any fixed or definite duration. Such provisions were routinely excised from foreign decrees and agreements entered into by the parties themselves (*e.g., Tumolillo v Tumolillo,* 71 AD2d 625, *affd* 51 NY2d 790; *Sterlace v Sterlace,* 52 AD2d 743; *Matter of Stolls v Cabot,* 45 AD2d 1014; *Nichols v Nichols,* 11 AD2d 149; *Santamaria v Santamaria,* 74 Misc 2d 657; *Spector v Spector,* 49 Misc 2d 591, *affd* 24 AD2d 1082). Further, under New York law, the burden of establishing grounds for modification of support rests upon the party seeking the change (Domestic Relations Law § 236 [A] [1]; [B] [9] [b]; *Lipow v Lipow,* 110 AD2d 756 [2d Dept, Apr. 15, 1985]; *Matter of Kronenberg v Kronenberg,* 101 AD2d 951; *Miklowitz v Miklowitz,* 79 AD2d 795, *lv denied* 53 NY2d 604; *Albanese v Albanese,* 75 AD2d 987, 988; *Hickland v Hickland,* 56 AD2d 978, 979). This policy is diametrically opposed to New Hampshire's three-year renewal statute whose purpose "is to require the court to reexamine periodically 'all the circumstances then existing' to assure that justice between the parties is maintained in the face of changing circumstances" (*Morphy v*

*Morphy,* 112 NH 507, 510, 298 A2d 580, 582, *supra),* and terminates alimony in the absence of an application to renew.

To relegate Mrs. Pearson to remedies in New Hampshire is, moreover, a manifest injustice. The record before us establishes that her former husband has employed almost every subterfuge to avoid his support obligation, including the commencement of a patently frivolous action in New Hampshire Federal Court seeking to enjoin the Family Court in this State from enforcing its orders. Mrs. Pearson, on the other hand, is in dire financial straits. She is unemployed and has serious medical disabilities. She cannot afford a legal war of attrition.[3] While her right to alimony can be retroactively renewed under New Hampshire law (*Morphy v Morphy, supra; Taylor v Taylor, supra; Madsen v Madsen,* 106 NH 267, 209 A2d 728), her New York residence might lead its courts to decline to entertain such an application as a matter of discretion (*see, Madsen v Madsen, supra;* Scoles and Hay, Conflict of Laws § 15.37, n 2). Having secured a New York enforcement order within the appropriate time frame, Mrs. Pearson should not now be tossed out of the New York courts because of a sister State policy at odds with our own which we are not constitutionally compelled to recognize.

Accordingly, I would reverse the order dated April 19, 1983, deny that branch of respondent husband's motion as sought vacatur of the order dated April 7, 1980, and vacate the order dated December 20, 1983.

O'CONNOR and LAWRENCE, JJ., concur with RUBIN, J.; TITONE, J. P., dissents and votes to reverse the order dated April 19, 1983, deny that branch of respondent husband's motion as sought vacatur of an order dated April 7, 1980, and vacate the order dated December 20, 1983, with an opinion.

Order of the Family Court, Rockland County, dated April 19, 1983, affirmed, without costs or disbursements.

Appeal from an order of the same court, dated December 20, 1983, dismissed, without costs or disbursements.

---

**3.** It would serve no purpose to compel Mrs. Pearson to commence a plenary action in the Supreme Court at this juncture.