Ricky JONES, Plaintiff,

v.

Donald GRUNEWARLD, et al., Defendants.

No. 85 Civ. 7597 (VLB).

United States District Court, S.D. New York.

Sept. 22, 1986.

Ricky Jones, pro se.

Arnold D. Fleischer, Asst. Atty. Gen., N.Y.S. Atty. Gen.'s Office, New York City, Carolyn Fiske, Plunkett & Jaffe, P.C., White Plains, N.Y. for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiff Ricky Jones, an inmate at the Ossining Correctional Facility in Ossining, New York, has brought this action *pro se* pursuant to 42 U.S.C. § 1983, alleging violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution and New York State law. He has named as defendants Donald Grunewarld, the former president of Mercy College, Thomas Cameron, Assistant Director of Institutional Extensions of Mercy College, Thomas A. Coughlin, III, New York State Commissioner of Corrections, Gordon M. Ambach, New York State Commissioner of Education, Mario M. Cuomo, Governor of New York State and James E. Sullivan, Superintendent of the Ossining Correctional Facility. All defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## I.

In determining the sufficiency of a *pro se* complaint, a court must construe the complaint liberally, "applying less stringent standards than when a plaintiff is represented by counsel." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) *(citations omitted ).* "To warrant dismissal, the complaint, considering all its allegations as true, must be frivolous on its face or wholly insubstantial." *Id. (citations omitted ).*

With these guidelines in mind, I take as true for the purposes of these motions the following facts:

Plaintiff was admitted to the educational prison program run by Mercy College ("Mercy") at the Ossining Correctional Facility and completed with honors the spring, 1984 semester. Because his state financial aid was exhausted, however, he could not continue in the program. When plaintiff inquired into the availability of scholarships, he was advised by Thomas Cameron, Assistant Director of Institutional Extensions at Mercy College, that Mercy did not provide scholarships to prisoners. He wrote letters to all of the named defendants except Thomas Cameron to attempt to remedy his situation.

Having failed to receive satisfaction, plaintiff commenced this action. He contends that Mercy's failure to provide him with a scholarship to further his college education violated Section 136 of the New York Correction Law and deprived him of certain civil and constitutional rights.

## II.

A. *Plaintiff's Claim Against Grunewarld and Cameron*

To state a claim under § 1983, a plaintiff must allege not only that the defendants deprived him of a right secured by the Constitution or federal law, but also that in so doing they acted under "color of state law." *Singer v. Bell,* 613 F.Supp. 198, 201 (S.D.N.Y.1985); *Rendell-Baker v. Kohn,* 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982). He will not prevail unless the actions upon which his claims are based are "fairly attributable to the state." *See Singer,* 613 F.Supp. at 201, *citing Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory

or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *accord, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982).

"To act 'under color of' state law for § 1983 purposes, however, does not require that a defendant be an officer of the State." *Singer*, 613 F.Supp. at 201. A private party may be liable under § 1983 for his conduct if he is "a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970), cited in *Annunziato v. The Gan, Inc.*, 744 F.2d 244, 250 (2d Cir. 1984). The threshold question, then, as to Mercy College employees Grunewarld and Cameron, is whether their actions were under color of state law.

The complaint does not address the relationship between Mercy and the state. However, from the materials plaintiff attached as exhibits to the complaint,[1] I infer that he attempts to draw a link between Mercy and New York State on the basis that Mercy receives funding from the state. For the purposes of this motion, I assume that Mercy receives funding from government sources.

However, the fact that Mercy is supported by state funds fails to satisfy the requirement of state action. The U.S. Supreme Court has noted that the mere receipt of public funds by an entity "does not make [that entity's] discharge decisions acts of the state." *See Gilliard v. N.Y. Public Library System*, 597 F.Supp. 1069, 1075 (S.D.N.Y.1984), *citing Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). "While state funding may be a factor in determining if a private group's action were taken under

color of state law, state funding alone does not transform employment decisions into 'state action' for purposes of § 1983." *Id.* Even the presence of public funds in significant amounts is insufficient to transmute the action of a private institution into state action. *See Johnson v. ETS*, 754 F.2d 20, 24 (1st Cir.1985) *cert. den.* —— U.S. ——, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985); *Weise v. Syracuse University*, 553 F.Supp. 675, 682 (N.D.N.Y.1982).

On the basis of these principles, plaintiff Jones' claims against Mercy officials Cameron and Grunewarld must be dismissed, because as to them plaintiff has not satisfied the state action requirement of § 1983. Moreover, he does not demonstrate any other "state entanglement" or "state nexus" between Mercy and the state. *See Giannattasio v. Stamford Youth Hockey Ass'n, Inc.*, 621 F.Supp. 825, 827 (D.Conn. 1985).[2]

## B. *Plaintiff's Claim Against the State Defendants*

While there is no state action problem with respect to defendants Coughlin, Ambach, Cuomo and Sullivan (the "state defendants"), plaintiff Jones has not stated a claim against them.

### 1. *The State Claim*

■ As a threshold matter, plaintiff contends that the defendants have violated his rights under § 136 of the New York Correction Law, which deals with the education of inmates. In *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the U.S. Supreme Court held that the Eleventh Amendment prohibits a federal district court from ordering state officials to conform their conduct to state law. Thus I

---

**1.** A Rule 12(b)(6) motion is addressed to the face of the pleadings. The pleadings are deemed to include any document attached as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated by reference. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985) (*citations omitted*). Accordingly, I may and do consider the various documents attached to the pleadings. However, I have not considered the affi-

davits submitted by defendants Cameron and Grunewarld. *Id.* at 1066.

**2.** Even if I were to find state action, the analysis which follows as to the state defendants would be applicable to Cameron and Grunewarld and the dismissal of the claims as to them would still result.

am without authority to enforce § 136 by granting affirmative relief to plaintiff.

### 2. *The Constitutional Claims*

Plaintiff claims that his constitutional rights have been violated, arguing that he is entitled to the same educational opportunities as are afforded wealthier and nonincarcerated applicants. Specifically, he alleges that the defendants have violated his equal protection and due process rights by failing to provide him with a scholarship simply because he is a prisoner.

### a. *Due Process*

■ In order to satisfy the Due Process Clause, plaintiff must establish that he had a property right to a scholarship. Property interests are not created by the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see also Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Accordingly, I must initially look to state law, and specifically § 136 of the N.Y. Correction Law, to determine whether it confers a property interest which is subject to due process protection.

Section 136 does not provide a property interest to plaintiff Jones. As Chief Judge Motley observed in a slightly different context:

> Section 136 does not confer a right to both a full-time education and a full-time job. Section 136 provides that each inmate shall be given a program of education. Correctional education is designed to return the inmate to society as a 'wholesome' and 'good citizen.' The statute, however, does not specify any detailed educational program and does not confer either a property or a liberty interest in a full-time education.

*Lane v. Reid*, 575 F.Supp. 37, 39 (S.D.N.Y. 1983). Thus plaintiff was not deprived of property without due process. Moreover, the exhibits annexed to his complaint demonstrate that he has been afforded adequate educational opportunities while incarcerated, and that alternative means of financial assistance have been suggested to him.

### b. *Equal Protection*

In assessing an equal protection claim, the initial inquiry is whether some "fundamental right" is involved or whether the challenged state action involves a "suspect class." *See San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). If so, the Supreme Court has imposed an almost insurmountable level of "strict scrutiny" of the challenged state action. *Id. See also Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Otherwise, the Supreme Court has required only that, to survive challenge, a governmental distinction be drawn "in such a manner as to bear some rational relationship to a legitimate state end." *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982).

■ There is no fundamental right to an education. *Plyler*, 457 U.S. at 221, 102 S.Ct. at 2396. Neither *qua* prisoner, nor *qua* person without financial advantage, is plaintiff a member of a "suspect class". Only laws that classify persons on the basis of either their race or their national origin have been deemed "suspect" and subject to the "strict scrutiny" standard of review. *See Korematsu v. U.S.*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

■ Thus, to be sustained, defendants' activities need only be rationally related to a legitimate state interest. *See Rodriguez*, 411 U.S. at 39–40, 93 S.Ct. at 1300; *Smrcka By Smrcka v. Ambach*, 555 F.Supp. 1227, 1235 (E.D.N.Y.1983). In resolving this issue, which appears to be one of first impression in this Circuit, I am aided by a recent decision by the Supreme Court of New Hampshire. In *New Hampshire v. Evans*, 127 N.H. 501, 506 A.2d 695 (1985), the court was presented with the question of whether an inmate at the New Hampshire State Prison had a constitution-

al right to a state-funded education.[3] *Id.* 506 A.2d at 697. It held that no such right existed: "A talented law-abiding citizen of the State of New Hampshire has no right to a state-funded college education. A talented inmate of the New Hampshire State Prison has no greater right." *Id.* 506 A.2d at 699. I concur. None of the defendants has an obligation to provide a state-funded education to plaintiff Jones, regardless of how academically talented or qualified he may be.

■ Because the defendants have acted in a rational and reasonable manner, plaintiff's Equal Protection claim also fails.

### III.

The complaint, filed in forma pauperis under 28 U.S.C. § 1915, is dismissed for failure to state a claim upon which relief can be granted. I certify that any appeal from this order in forma pauperis would not be taken in good faith because such an appeal would be frivolous. 28 U.S.C. § 1915(a); *Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 920, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**3.** The facts of *Evans* are as follows: Vernon Evans is an inmate who was sentenced in 1982 to serve an 18 year prison term for second degree murder. The sentence imposed by the New Hampshire Superior Court specified conditions under which the inmate might achieve early release. One of the conditions was that he demonstrate "extraordinary and unexpected progress" during confinement. As an inmate, Evans was awarded a high school diploma and began college studies that were available free through the prison. However, he could not afford to pay for additional courses required for him to obtain a degree, and argues that in order to meet the "extraordinary progress" condition the state must provide him with state-funded college level courses. *See* 506 A.2d at 696–97.

While there is no evidence of a condition of sentencing in the case of plaintiff Jones, the issues in the *Evans* case seem otherwise to be analogous to those in the instant case.